UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                                     :
SANTINA WESNER,                      :
                                                     :
                     Plaintiff,              :         Civil Action No. 10-308 (JAP)
      v.                                          :
                                                     :         **OPINION**
JENNIFER VELEZ, Commissioner, New   :
Jersey Department of Human Services, and   :
JOHN R. GUHL, Director, New Jersey          :
Department of Human Services, Division of  :
Medical Assistance and Health Services,       :
                                                     :
                    Defendants.     :
_____ :

PISANO, District Judge:

       Presently before the Court is Plaintiff, Santina Wesner's Motion for a Preliminary Injunction enjoining Defendants, Jennifer Velez, Commissioner of the New Jersey Department of Human Services, and John R. Guhl, Director of the New Jersey Department of Human Services, Division of Medical Assistance and Health Services, (collectively "DMAHS") from treating what Plaintiff alleges is a promissory note as a trust-like device for purposes of determining Medicaid eligibility. For the reasons set forth below, Plaintiff's motion is denied.

      I.     Background

       Santina Wesner is an elderly resident of the Franklin Care Center nursing facility located in Franklin Park, New Jersey. Compl. at ¶¶ 4-5. In January 2009, Wesner applied for benefits under New Jersey's medical assistance program ("Medicaid") seeking eligibility as of January 1, 2010. *Id*. at ¶ 2. The New Jersey Department of Human Services, Division of Medical Assistance and Health Services ("DMAHS") is responsible for the administration of the Medicaid program in New Jersey. *Id.* at ¶¶ 6-7.

1

In December 2008, Wesner gave an $80,000.00 uncompensated gift to Anne Aamland, her Power of Attorney ("POA"). Compl. at ¶ 23; Certification of Elena Josephick ("Josephick Cert.") at ¶ 5. The $80,000.00 uncompensated gift to Aamland resulted in an eleven-month period of Medicaid ineligibility. Compl. at ¶ 24. On December 10, 2008, Wesner purchased what she asserts is a promissory note in the amount of $60,000.00 (the "Note") from Aamland. Compl. at ¶¶ 25-26. The unsecured Note bore interest at a rate of 6.2% per annum and had a monthly payment of $4,818.17. *Id.* at ¶ 26. The term of the Note was thirteen months and provided Wesner with funds to cover the cost of her nursing care during the eleven-month period of Medicaid ineligibility that resulted from her uncompensated gift to Aamland. *Id.* at 27. The final payment on the Note was due on January 5, 2010. Josephick Cert. at ¶ 6.

Wesner did not disclose the Note on her January 21, 2009 application for Medicaid benefits. *Id*. at ¶ 4. On her Medicaid application, Wesner indicated that she was not owed any money and that she did not have any resources, including "Notes or Contracts of Value." *Id.* Aamland signed Wesner's January 2009 Medicaid application has her POA. *Id.* The Note was finally disclosed to DMAHS on December 30, 2009, when Wesner's attorney forwarded a copy of the Note to Somerset County. *Id.* at ¶ 6. In a January 22, 2010 letter to DMAHS, Wesner's attorney acknowledged that the Note was part of a Medicaid planning technique. *Id.* at 10. The letter stated that "[t]he borrower under the note borrowed the money as part of a Medicaid planning technique involving a gift/loan. The borrower held the money loaned and repaid the same to the lender over the time period specified in the note." *Id.* at ¶ 10.

On January 20, 2010, Wesner filed the above captioned action against Jennifer Velez, Commissioner of the New Jersey Department of Human Services, and John R. Guhl, Director of the New Jersey Department of Human Services, Division of Medical Assistance and Health

Services pursuant to 42 U.S.C. § 1983 seeking an injunction enjoining Defendants from treating the Note as a trust-like device for purposes of Medicaid eligibility, a redetermination of Wesner's Medicaid benefits in light of the Note not being treated as a trust-like device, and Medicaid eligibility retroactive for three calendar months prior to the Court's order if the Court's order results in Medicaid eligibility.  DMAHS had not determined Wesner's Medicaid eligibility at the time this action was filed.

On January 29, 2010, Wesner filed the instant motion for a preliminary injunction seeking to enjoin DMAHS from considering the Note as a trust-like device when determining Wesner's Medicaid eligibility.  Wesner argues that as a matter of law, the Note is a bona fide promissory note and not a trust-like device because it meets the five requirements of SI 1120.220(C)(1) to (C)(5) and the three requirements of 42 U.S.C. § 1396p(c)(1)(I)(i) to (iii).  DMAHS opposes the motion, arguing that the Note is a trust-like device for purposes of determining Medicaid eligibility.

II.     Standard of Review

In evaluating a motion for a preliminary injunction, a court considers whether: " '(1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest.' " *P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC,* 428 F.3d 504, 508 (3d Cir.2005) (quoting *NutraSweet Co. v. Enter., Inc.,* 176 F.3d 151, 153 (3d Cir.1999)) (applying standard on motion for preliminary injunction). Because a preliminary injunction is an extraordinary remedy, "[t]he burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate." *P.C. Yonkers, Inc., supra,* 428 F.3d at 508. Moreover, the plaintiff, carrying the

burden, must clearly show the four required prongs. *Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997). If disputed issues of fact exist, a court cannot issue a preliminary injunction. *Riley v. Brown,* 2006 WL 1722622, *7 (D.N.J. June 21, 2006).

III.  Discussion

When determining eligibility for benefits under Medicaid, state agencies must employ a methodology that is "no more restrictive than the methodology which would be employed under the supplemental security income program." 42 U.S.C. § 1396a(a)(1)(C)(i)(III). The Social Security Administration has published a Program Operating Manual System (POMS) representing the "publicly available operating instructions for processing Social Security claims." *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385 (2003). While not the product of formal rulemaking, the POMS provide guidance to the courts and warrant respect. *Id.* (citing *Skidmore v. Swift & Co.,* 323 U.S. 134, 139-140 (1944)).

POMS SI 01120.220(C)(1) to (5) lists the five requirements for a bona fide promissory note as a loan agreement that is 1) enforceable under state law, 2) in effect at the time of the transaction, 3) containing an acknowledgement of an obligation to repay, 4) a plan for repayment, and 5) a repayment plan that is feasible in light of "the amount of the loan, the individual's resources and income (including anticipated SSI benefits), and the individual's living expenses." POMS SI 01120.220(C)(1)-(5). The proceeds of the loan may be a resource if "the lender can access it for his or her own use." *Id.* at (B)(2)(b).

Individuals applying for Medicaid benefits who transfer assets for less than fair market value are temporarily ineligible to receive benefits under the Medicaid Act. 42 U.S.C. § 1396p(c). With respect to the purchase of promissory notes as a transfer of assets, 42 U.S.C. §

4

1396p(c)(1)(I) provides three requirements for a bona fide promissory note. Those requirements are 1) an actuarially sound repayment term, 2) equal payments for the term of the loan with no deferral or balloon payments made, and 3) no cancellation of the debt in the event of the lender's death. 42 U.S.C. § 1396p(c)(1)(I)(i)-(iii). The requirements of 42 U.S.C. § 1396p(c)(1)(I) were enacted to prevent the improper use of promissory notes by individuals seeking Medicaid benefits. Center for Medicaid and State Operations, *Sections 6011 and 6016: New Medicaid Transfer of Asset Rules Under the Deficit Reduction Act of 2005* (July 27, 2006), *available at* http://www.cms.gov/smdl/downloads/TOAEnclosure.pdf.

      DMAHS argues that the Note is a trust-like device as defined by the POMS and should be considered as a resource for determining Medicaid eligibility. The POMS define a trust-like device as "a legal instrument, device, or arrangement, which may not be called a trust under State law, but is similar to a trust" and involves 1) a grantor, 2) who transfers assets, 3) to an individual with fiduciary obligations. POMS SI 1120.201B.5. The transfer is made with the intention that the assets "be held, managed or administered by the individual or entity for the benefit of the grantor." *Id.* Trust-like devices include, but are not limited to, "escrow accounts, investment accounts, conservatorship accounts, pension funds, annuities, certain Uniform Transfers to Minors Act (UTMA) accounts and other similar devices" that are managed by an individual or entity with fiduciary obligations. *Id.* Trust-like devices receive the same treatment as trusts when determining Medicaid eligibility. *See* POMS SI 1120.201G.1.

      Wesner argues that the Note meets the technical requirements of 42 U.S.C. § 1396p(c)(1)(I)(i)-(iii) and POMS SI 01120.220(C)(1)-(5), and therefore must be treated as a bona fide promissory note as a matter of law. 42 U.S.C. § 1396p(c)(1)(I)(ii) requires equal payments for the term of the loan with no deferral or balloon payments. Here, the Note was executed on

December 10, 2008.  The terms of the Note specified that it would be repaid in thirteen monthly installments of $4,818.17 commencing on January 5, 2009 and ending on January 5, 2010.  Josephick Cert. at ¶ 6.  The first two payments under the Note were not made until February 11, 2009, however.  *Id.* at ¶ 7.  POMS SI 01120.220(C)(5) requires that repayment be feasible in light of the borrower's resources, income, and living expenses.  Here, there is no evidence that Aamland's financial condition was considered when the Note was executed.  Additionally, Aamland, as Wesner's POA, failed to disclose the Note on Wesner's January 21, 2009 Medicaid application and affirmatively represented that no one owed Wesner any money at the time the application was made.  *Id.* at 4.  The late payments, lack of investigation into Aamland's financial condition, and the representation that Wesner was not owed any money as of January 21, 2009, place the bona fides of the Note in question.

Further, the Note fits the definition of a trust-like device under the POMS.  A trust-like device may be created when a grantor transfers money to a person with fiduciary obligations "to be held, managed or administered by the individual [] for the benefit of the grantor."  POMS SI 1120.201B.5.  Here, there is no question that Wesner transferred money to Aamland, a person who, as Wesner's POA, owes Wesner a fiduciary duty.  *See* N.J.S.A. § 46:2B-19 ("[a]n agent presenting or acting pursuant to or relying on a power of attorney described in section 2 of this act shall be a fiduciary within the meaning of the 'Uniform Fiduciaries Law'").  Further, Wesner acknowledges that the Note was executed as part of a gift/loan transaction designed to provide Wesner with the funds necessary to pay for her nursing care during the period of Medicaid ineligibility caused by her $80,000.00 uncompensated gift to Aamland.

Wesner asserts that 42 U.S.C. § 1396p(c)(1)(I)(i)-(iii) was enacted by Congress to avoid "sham transactions."  Compl. at Exhibit A.  The transaction entered into by Wesner and Aamland

appears to be a "sham transaction" designed to avoid application of the rules governing Medicaid eligibility. The loan between Wesner and Aamland has all the characteristics of a trust-like device under the POMS. This was not an arms-length transaction between two unrelated parties. Aamland and Wesner apparently enjoy a close friendship; Wesner gave Aamland an $80,000.00 uncompensated gift and has made Aamland her POA. As such, Aamland owes Wesner a fiduciary duty. Further, Wesner admits that the gift/loan transaction entered into with Aamland was part of a "Medicaid planning technique". Based a review of the evidence before the Court at this time, the Court concludes that Wesner has failed to establish that she is likely to succeed on the merits of her claim; therefore, Wesner's motion for a preliminary injunction is denied.

IV. Conclusion

For the reasons set forth above, Plaintiff's Motion for a Preliminary Injunction is denied. An appropriate Order accompanies this Opinion.

/s/ JOEL A. PISANO
United States District Judge

Date: April 19, 2010